

**SO ORDERED.**

**SIGNED this 14 day of August, 2007.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| KIZZY N. STITH | 07-01147-5-ATS |
| DEBTOR | |

### ORDER REGARDING OBJECTION TO VALUATION

The matter before the court is the objection filed by Green Tree Servicing, LLC to the debtor's valuation of collateral. A hearing took place in Raleigh, North Carolina on August 7, 2007.

The debtor, Kizzy N. Stith, filed a petition for relief under chapter 13 of the Bankruptcy Code on May 25, 2007. Green Tree holds a security interest in the amount of $37,550.00 in the debtor's mobile home, which is located on real property that the debtor does not own. The debtor's plan proposes to modify Green Tree's secured claim to $21,012.00, the current estimated value of the mobile home. Green Tree contends that the debtor is prohibited from modifying the claim under 11 U.S.C. §§ 1322(b)(2) and 101(31)(A). The issue is whether a definition added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005 alters the interpretation of § 1322(b)(2), which was not amended by BAPCPA.

The crux of Green Tree's argument is that Congress expanded the scope of § 1322(b)(2) with the addition of § 101(13A) to include mobile homes, so that debtors can no longer "cram down" the rights of secured creditors, regardless of whether the debtor owns the underlying real property. The debtor argues that § 1322(b)(2) remains unchanged, and only protects an interest in real property that is the debtor's principal residence. The debtor contends that while a mobile home can be considered real property under North Carolina law, the debtor's mobile home does not qualify for treatment as real property and instead is considered personal property.

Section 1322(b)(2) of the Bankruptcy Code allows a debtor's chapter 13 plan to modify the rights of a secured party, with the exception of claims secured by real property that is the debtor's principal residence. Under § 1322(b)(2), "...the plan may – modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2). This rule was not changed by BAPCPA, however the Act did add the definition of the term 'debtor's principal residence,' which was not previously present in the Code. Section 101(13A) defines 'debtor's principal residence' as "a residential structure, including incidental property, without regard to whether that structure is attached to real property; and includes...a mobile or manufactured home...." 11 U.S.C. § 101(13A). The question raised by the addition of this term is whether the anti-modification provision of § 1322(b)(2) now applies to mobile homes, regardless of whether the debtor owns the underlying real property.

It is certainly possible to change the meaning of a statute by amending provisions related to the principal operative section, without changing the principal section itself. For example, In re Donald presented the question of whether the Bankruptcy Code, as amended by BAPCPA, would continue to allow a debtor to retain property securing a debt by keeping current on installment

2

payments, but without reaffirming the debt. In re Donald, 343 B.R. 524 (Bankr. E.D.N.C. 2006). This court found that the "ride-through" option for chapter 7 debtors was terminated by amendments to the Bankruptcy Code made by BAPCPA. Even though Congress chose not to change the principal sections that supported the "ride-through" option, the elimination of the "ride-through" was accomplished by changes to other sections and the addition of sections. Id. However, in this matter, the principal operative section, § 1322(b)(2), has not been changed by the BAPCPA addition of § 101(13A) to the Code, for reasons discussed below.

Recent cases addressing the issue have both allowed and denied modification of rights, turning on the application of rules of statutory interpretation. Green Tree argues that this court should follow In Re Shepherd, where the court held that the rights of a secured party cannot be modified where the claim is secured by a mobile home even though the debtor does not own the underlying real property. 354 B.R. 505 (Bankr. E.D. Tenn. 2006). The court in Shepherd applied various rules of statutory interpretation in an attempt to read §§ 1322(b)(2) and 101(13A) together, but was not satisfied with the result, finding that the dual reading created an absurdity. Id. The court ultimately concluded that Congress must have intended to expand the scope of § 1322(b)(2) to prevent a debtor from modifying the rights of a creditor whose claim is secured by an interest in a mobile home, despite the absence of an interest in the underlying real property.

Other courts have reached an opposite result, finding that § 1322(b)(2) still only applies to real property and that state law governs whether or not a mobile home is considered real property. In particular, the court in In re Cox applied the plain meaning rule, reading § 1322(b)(2) as follows:

> [t]he phrase "that is the debtor's principal residence" modifies "real property," not the other way around. One turns grammar on its head if one treats redefinition of a limiting dependent phrase as totally eliminating the words to which it is dependent. What the sentence says is that a plan may modify claims that are secured by real

> property that is the debtor's principal residence. Even though "debtor's principal residence" may include personalty, the reference to "debtor's principal residence" is a <u>limiting</u> clause. Expanding or contracting the limiting clause does not eliminate the words that it limits.

In re Cox, 2007 Bankr. LEXIS 2218, at *4 n.4 (S.D. Tex. June 29, 2007).

The court in <u>Cox</u> goes on to state that speculation about Congress' intentions is unwarranted. <u>Id.</u> at 5. In fact, the court found it "...implausible that Congress simply "forgot" to delete the word "real" from § 1322(b)(2), thereby requiring the courts to speculate on the purpose of the new definition." <u>Id.</u> at 4-5.

Reaching the same end result, the court in <u>In re Moss</u> provides the following framework for reading § 1322(b)(2):

> The terms "real property" and "debtor's principal residence" are two distinct terms of art that require individual analyses. Whereas the court must look to state law in determining whether a debtor's residence constitutes "real property," the court must look to Section 101(13A) in determining whether the same property constitutes the "debtor's principal residence." Therefore, although a residential structure may constitute a "debtor's principal residence" under federal bankruptcy law, it does not necessarily constitute "real property" under state law.

<u>In re Moss</u>, 2007 Bankr. LEXIS 1321, at *6-7 (S.D. Ala. April 4, 2007), rehr denied <u>In re Herrin</u>, 2007 Bankr. LEXIS 2333 (Bankr. S.D. Ala. July 3, 2007).

This court agrees with both <u>Cox</u> and <u>Moss</u>. Post BAPCPA, the scope and meaning of § 1322(b)(2) remain the same. Protection from modification of rights exists only for holders of claims secured by an interest in real property. North Carolina law applies to determine whether a particular residential structure is considered real or personal property, for purposes of § 1322(b)(2). Under the North Carolina General Statutes, real property is defined as follows:

> "[r]eal property," "real estate," and "land" mean not only the land itself, but also buildings, structures, improvements, and permanent fixtures on the land, and all rights and privileges belonging or in any way appertaining to the property. These

4

> terms also mean a manufactured home as defined in G.S. 143-143.9(6) if it is a residential structure; has the moving hitch, wheels, and axles removed; and is placed upon a permanent foundation either on land owned by the owner of the manufactured home or on land in which the owner of the manufactured home has a leasehold interest pursuant to a lease with a primary term of at least 20 years for the real property on which the manufactured home is affixed and where the lease expressly provides for disposition of the manufactured home upon termination of the lease. A manufactured home as defined in G.S. 143-143.9(6) that does not meet all of these conditions is considered tangible personal property.

N.C. Gen. Stat. §105-273(13) (LEXIS through 2006 Sess.).

Further, the court takes note of the fact that "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors," and the court also takes into account the "...complementary principle that preferential treatment of a class of creditors is in order only when clearly authorized by Congress." Howard Delivery Serv. Inc. v. Zurich Am. Ins. Co., – US –, 126 S. Ct. 2105, 2109 (2006). With § 1322(b)(2), Congress has clearly authorized preferential treatment of secured creditors with an interest in real property that is the debtor's principal residence. However, Congress has not clearly extended that preference to secured creditors whose collateral is considered personal property.

Green Tree's objection to the debtor's valuation of collateral will be denied. The collateral in question, the debtor's mobile home, is not considered real property under North Carolina law. The debtor's mobile home still has the wheels attached. While there may be other reasons the mobile home does not meet the requirements of North Carolina General Statute §105-273(13), because all conditions must be met, further analysis of the debtor's mobile home is not necessary. Because the debtor's mobile home is personal property, § 1322(b)(2) of the Bankruptcy Code allows the debtor's plan to modify Green Tree's rights.

Accordingly, Green Tree's objection to the debtor's valuation of the collateral is **DENIED** and Green Tree shall have a secured claim in the amount of $21,012.00.

**SO ORDERED**.

**END OF DOCUMENT**